**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALBERT DECOLLI,<br><br>    Plaintiff,<br><br>    v.<br><br>PARAGON SYSTEMS, INC., et al.,<br><br>    Defendants. | Civil Action No. 19-21192 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants the United States Marshals Service ("USMS") and the United States Department of Justice's ("DOJ") (collectively, the "Federal Defendants") Motion for Judgment on the Pleadings. (ECF No. 29.) Plaintiff Albert DeColli ("Plaintiff") opposed (ECF No. 32), and the Federal Defendants replied (ECF No. 33). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Federal Defendants' Motion is granted.

**I.   BACKGROUND**

Plaintiff alleges that the Federal Defendants and Defendant Paragon Systems, Inc. ("Paragon"), discriminated against him based on his gender and age, and also violated his procedural due process rights. Plaintiff is a seventy-one year old male who worked as a Court Security Officer ("CSO") at federal courthouses from April 2010 until his employment was terminated in June 2019. (Second Amended Complaint ("SAC") ¶¶ 1, 5, 22, ECF No. 11.) Plaintiff

was last employed by Paragon, a private security company that contracts with the USMS to provide security for federal courthouses. (*Id.* ¶¶ 5–6.)

A. **Paragon-USMS Contract and Plaintiff's Collective Bargaining Agreement**

The Paragon-USMS contract indicates that CSOs are deputized by the USMS and that "[s]uch deputation . . . does not establish an employment relationship with the USMS." (Contract *9, *55,[1] ECF No. 26-1.) When Plaintiff began working as a CSO, he signed a deputation form that states: "This appointment does not constitute employment by the [USMS], the [DOJ], or the United States Government. The appointee agrees to perform the duties required under this [s]pecial [d]eputation with knowledge that he or she is n[ot] entering into an employment agreement with the Federal Government or any element thereof." (Deputation Form, ECF No. 26-3.)

The contract also sets forth performance standards that CSOs must follow. Paragon provides the USMS with a District Supervisor who, among other things, oversees the performance of those standards and investigates allegations of misconduct. (Contract *15.) If a CSO is under investigation, the USMS retains the right to temporarily remove that individual from performing under the contract. (*Id.* at *104.) In addition, the USMS "reserves the right at all times to determine the suitability of any [Paragon] employee to serve as a CSO." (*Id.* at *103.)

Plaintiff was subject to a collective bargaining agreement ("CBA") between his union and Paragon. (*See generally* CBA, ECF No. 26-2.) The USMS is not a party to the CBA. Among other things, the CBA provides that Paragon retains the right to discharge, discipline, or suspend employees for just cause. (*Id.* at *11.) According to the CBA, just cause includes "any action or order of removal of an employee from working under the contract by the U.S. Government, or revocation of required CSO credentials by the USMS." (*Id.* at *16.) In the case of termination, the

---

[1] All numbers preceded by an asterisk refer to the page on the ECF header.

CBA states that a proposed removal "shall not become permanent without requisite notice to the employee and the opportunity provided for the employee to respond to the Government's action[.]" (*Id.* at *16–17.)

### B. Plaintiff's Allegations

On March 7, 2019, Paragon informed Plaintiff that he was being suspended for "several ongoing incidents." (SAC ¶ 16.) The suspension form that Plaintiff received described those incidents as follows: "Investigation has sustained intimidation and harassment of other CSO[s] in the workplace. Also, USMS Performance Standard Violations (PSV) Investigation is ongoing." (*Id.*) On March 21, 2019, Paragon interviewed Plaintiff about the alleged incidents. (*Id.*) During the interview, Paragon explained that Plaintiff was accused of (1) changing his clothes in front of female CSOs and (2) intimidating and harassing female CSOs by not speaking to them. (*Id.*) Plaintiff denied both accusations. (*Id.* ¶ 19.) On April 24, 2019, Paragon notified Plaintiff that the USMS directed his removal from the courthouse. (*Id.* ¶ 20.) Plaintiff appealed the USMS's decision. (*Id.* ¶ 21.) On July 17, 2019, Plaintiff learned that Paragon terminated his employment because of the USMS's decision to remove him from the site. (*Id.* ¶ 22.)

In August 2019, Plaintiff filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC"), alleging gender and age discrimination. (*Id.* ¶ 12.) Plaintiff asserts that he was treated "differently and less favorably" than two younger CSOs who were accused of more serious misconduct. (*Id.* ¶ 26.) And because the investigation was "sustained" before Plaintiff had an opportunity to provide his perspective, Plaintiff alleges that the female CSOs who made the allegations against him received preferential treatment. (*Id.* ¶ 27.) In September 2019, the EEOC informed Plaintiff that it found no violation. (*Id.* ¶ 14.)

### C. Procedural History

In December 2019, Plaintiff filed the underlying action against Paragon and the Federal Defendants. (*See* ECF No. 1.) Plaintiff filed the instant five-count Second Amended Complaint on March 6, 2020. (*See* SAC.) Three of the five counts are directed at the Federal Defendants. Count One alleges a violation of the Age Discrimination in Employment Act ("ADEA"); Count Two alleges a violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); and Count Four alleges a violation of the Fifth Amendment's Due Process Clause. (*Id.* ¶¶ 29–41, 47–54.)

The Federal Defendants filed an Answer on September 9, 2020. (Answer, ECF No. 26.) Fact discovery began that same month and is scheduled to close in September 2021. (ECF Nos. 27, 34.) On November 30, 2020, the Federal Defendants moved for judgment on the pleadings. (*See* Defs.' Moving Br., ECF No. 29.) Plaintiff opposed on December 12, 2020 (*See* Pl.'s Opp'n Br., ECF No. 32), and the Federal Defendants replied on January 4, 2021 (*See* Defs.' Reply Br., ECF No. 33).

### II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standards governing Rule 12(c) motions are the same ones that govern motions to dismiss under Rule 12(b)(6)." *Allah v. Hayman*, 442 F. App'x 632, 635 (3d Cir. 2011) (citing *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004)). "Like Rule 12(b)(6), Rule 12(c) requires the Court [to] 'accept the allegations in the complaint as true[] and draw all reasonable factual inferences in favor of the plaintiff.'" *Syncsort Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 324 (D.N.J. 1999) (quoting *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991)). A court may only grant a motion for judgment on the pleadings if the movant "clearly establishes that no

4

material issue of fact remains to be resolved and that [the movant] is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (internal quotations and citations omitted) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988)).

In deciding a Rule 12(b)(6) motion, courts may consider "exhibits attached to the complaint" and documents "integral to or explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation omitted).

## III. **DISCUSSION**

### A. **ADEA and Title VII Claims**

The Federal Defendants argue that the ADEA and Title VII claims should be dismissed because Plaintiff is not a federal employee. (Defs.' Moving Br. 17.)

The ADEA and Title VII protect employees from unlawful employment practices. *See* 42 U.S.C. § 2000e-2(a); 29 U.S.C. § 633a(a). Thus, to establish claims under the ADEA and Title VII, a plaintiff must establish that he or she is an employee of the defendant. *See Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 119 (3d Cir. 2013). The Third Circuit relies on the multi-factor balancing test set forth in *Darden* to determine whether an employment relationship exists. *Covington*, 710 F.3d at 119 (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 112 (1992)). In particular, courts focus on the "level of control the defendant[s] . . . exert over the plaintiff: which entity" (1) "paid [the employees'] salaries," (2) "hired and fired them," and (3) "had control over their daily employment activities." *Id.* (citation omitted).

#### 1. **Employee Compensation**

Plaintiff fails to satisfy the first *Darden* factor. As the Federal Defendants note, the CBA indicates that Paragon is responsible for paying the CSOs. (Defs.' Moving Br. 23 (quoting CBA

5

\*21).) Plaintiff does not claim that the USMS paid his salary, much less point to any contract provision that suggests that it did. In a recent case involving the same Defendants, a court found that Paragon is responsible for paying CSOs. *Riemensnyder v. Barr*, No. 20-109, 2020 U.S. Dist. LEXIS 203866, at \*20, \*23 (M.D. Pa. Oct. 30, 2020), *Report and Recommendation adopted by Order, Riemensnyder v. Barr*, ECF No. 64 (M.D. Pa. Jan. 5, 2021). This factor, therefore, favors a finding that no employment relationship existed between Plaintiff and the Federal Defendants.

### 2.    Hiring and Firing

The Federal Defendants assert that Paragon is responsible for hiring CSOs. In support, the Federal Defendants cite the Paragon-USMS contract, which requires Paragon to implement a "multi-faceted and systematic selection process that filters potential applicants," and "provide comprehensive oversight and quality control throughout recruiting, vetting, and selecting of qualified applicants from a pool of candidates." (Defs.' Moving Br. 19 (quoting Contract \*16).) The Federal Defendants also point to the CBA, which provides that Paragon retains the right to hire CSOs. (*Id.* at \*5 (citing CBA \*11).) For his part, Plaintiff asserts that the USMS retains a role in the hiring process because, under the Paragon-USMS contract, the USMS can reject a candidate based on the results of the candidate's background check or if the candidate fails to meet certain physical and medical standards. (Contract \*21–22.) In *Riemensnyder*, however, the court seemingly reviewed the same contract and found that Paragon hired CSOs. 2020 U.S. Dist. LEXIS 203866, at \*20. Thus, *Riemensnyder* supports a finding that Paragon is responsible for hiring CSOs.

As for which entity fires CSOs, Plaintiff relies on *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208 (3d Cir. 2015), to support his argument that the USMS "caused the termination of [his] employment by directing his removal from the USMS Contract." (Pl.'s Opp'n Br. 20.) In *Faush*,

the Third Circuit found that a disputed issue of material fact existed regarding the firing element where a retail store had "ultimate control over whether" a temporary employee that was assigned by a staffing company "was permitted to work at [the] store." *Faush*, 808 F.3d at 216. The court reasoned that the store "had the power to demand a replacement from [the staffing company]" and that "[n]othing in the record suggest[ed] that [the company] had any policy or practice, much less an obligation, to continue to pay a temporary employee who was not then on a temporary assignment or to provide an immediate alternative assignment for an employee turned away from a job." *Id.* (citation omitted).

As the Federal Defendants note, however, *Faush* did not involve CSOs. In cases that did involve CSOs, courts have concluded that only the private security company had the authority to fire CSOs because those companies retained the discretion to reassign the CSOs to another client. *See Riemensnyder*, 2020 U.S. Dist. LEXIS 203866, at *22–23 ("removal of [the CSO] from one contract did not preclude Paragon from transferring her to another client's contract. Given that Paragon retained the discretion to reassign [the CSO], it cannot be said that the [USMS] had the power or authority to fire her"); *Binns v. Lynch*, No. 16-3283, 2019 WL 2503054, at *4 (E.D. Pa. June 17, 2019) (same). Plaintiff does not address *Riemensnyder's* finding that CSOs are fired by Paragon, not the USMS. Because *Riemensnyder* presents a more factually analogous case, the Court finds that Paragon is responsible for firing CSOs.

On these facts, the Court finds that the second *Darden* factor also favors a finding that no employment relationship existed between Plaintiff and the Federal Defendants.

### 3. Control Over Daily Employment Activities

Finally, the third *Darden* factor favors the Federal Defendants. Pursuant to the Paragon-USMS contract, Paragon provided the USMS with a District Supervisor—a "first-line supervisor"

that evaluated the CSOs' compliance with the performance standards and investigated allegations of misconduct. (Contract *12, *15.) Plaintiff acknowledges that "much of the day-to-day supervision of CSOs falls to agents of [Paragon]." (Pl.'s Opp'n Br. 8.) Nevertheless, Plaintiff points to other provisions in the Paragon-USMS contract to suggest that the USMS retains control over the CSOs' activities. (*Id.* at *5–8, 14.) The Third Circuit, however, found that USMS employment standards for CSOs are "insufficient to ground a reasonable inference that the Marshals exercised daily or routine supervision over the CSOs." *Urgent v. USMS*, 704 F. App'x 107, 110 n.6 (3d Cir. 2017); *see Riemensnyder*, 2020 U.S. Dist. LEXIS 203866, at *23 (noting that CSOs are "directly supervised by Paragon"); *Binns*, 2019 WL 2503054, at *4 (finding that the USMS did not "play a role in daily supervision" of CSOs). Importantly, the Third Circuit in *Urgent* found that the plaintiff failed to meet the third *Darden* factor because, as the case is here, the "site supervisor employed by the private contractor performs daily supervision of the CSOs at the courthouse." 704 F. App'x at 110. The third *Darden* factor, therefore, favors a finding that no employment relationship existed between Plaintiff and the Federal Defendants.

In sum, the three central *Darden* factors weigh in favor of finding that Plaintiff was not an employee of the Federal Defendants.[2] The Court is mindful that the above-cited cases were decided at the summary judgment stage.[3] Those cases, however, rejected essentially the same arguments

---

[2] The Court notes that in *Urgent*, the Third Circuit found that the CSO was employed by the private security company, not the USMS, where "two of the three central factors in the *Darden* analysis [did] not support a conclusion that the Marshals could be considered an employer." 704 F. App'x at 110.

[3] In *Riemensnyder*, the federal defendant moved alternatively for dismissal under Rule 12(b)(1) or summary judgment. 2020 U.S. Dist. LEXIS 203866, at *3. In adopting the recommendation to grant the federal defendant's motion, the district court noted that "the Third Circuit and other courts within the circuit have examined the employment of a CSO contractor and the language in the USMS contracts and have found the CSO to be solely employed by the contractor." Order, *Riemensnyder*, No. 20-109, ECF No. 64, at *2 n.2 (finding that the plaintiff's employment discrimination claim failed as a matter of law against a federal defendant).

raised by Plaintiff and found that no employment relationship existed as a matter of law. The Court, therefore, finds that no disputed issue of material fact exists as to whether Plaintiff was an employee of the Federal Defendants and, accordingly, grants the Federal Defendants' Motion for Judgment on the Pleadings as to Plaintiff's ADEA and Title VII claims.

**B.    Due Process Claim**

The USMS argues that Plaintiff's due process claim should be dismissed because he received sufficient notice and an opportunity to respond, as required under the CBA. (Defs.' Moving Br. 24–25.) The USMS also asserts that the "required process is minimal," and thus no traditional hearing is warranted, because the USMS "has a strong interest in maintaining courthouse security through qualified CSOs." (*Id.* at 23–24.)

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for [a] hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). "One of the liberty interests protected by the Fifth Amendment is the right to 'follow a chosen profession free from unreasonable governmental interference.'" *Campbell v. Dist. of Columbia*, 894 F.3d 281, 288 (D.C. Cir. 2018) (quoting *Green v. McElroy*, 360 U.S. 474, 492 (1959)). A plaintiff can show deprivation of this liberty interest "when the government takes certain adverse actions and those actions foreclose her freedom to pursue a chosen profession." *Id.* While due process requires notice and a hearing, when that notice and hearing must be provided and how intensive the hearing must be is a determination that depends on the balancing of three interests: "(1) the private interests at stake, (2) the risk of error in the procedure used compared with the degree of improved accuracy that additional procedures

9

would provide, and (3) the government's interest." *Wilson v. MVM, Inc.*, 475 F.3d 166, 178 (3d Cir. 2007) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)).

In *Wilson*, the Third Circuit found that CSOs had a constitutionally protected interest in their continued employment where, as here, the CBA contained a "just cause" provision. *Wilson*, 475 F.3d at 178; (*see* CBA \*16 ("no Employee shall be disciplined or terminated without just cause").) Thus, contrary to the Federal Defendants' suggestion, Plaintiff does have a constitutionally protected interest in his continued employment. Nevertheless, the Court agrees that Plaintiff received proper procedural due process.

In his complaint, Plaintiff asserts that the USMS violated his due process rights by failing to provide him with sufficient "pre-termination" and "post-termination" protections before directing his removal. (SAC ¶¶ 51–52.) Plaintiff points to no provision in the CBA or Paragon-USMS contract that obligated the USMS to provide CSOs with notice or a hearing before he or she is *temporarily* removed. Nor does Plaintiff cite any legal authority that suggests such process is warranted under the circumstances. The Court agrees that, under these circumstances, the USMS has a strong security interest in temporarily removing CSOs who are under investigation for alleged misconduct. And while Plaintiff insists that the allegations were sustained before he was given an opportunity to respond, Plaintiff does not dispute that he was provided with notice and an opportunity to be heard before he was permanently terminated, in accordance with the CBA. (CBA \*16–17 (The CBA states that any removal of a CSO "shall not become *permanent* without requisite notice to the employee and the opportunity provided for the employee to respond." (emphasis added).) In that regard, Plaintiff was: notified of the allegations on March 7, 2019; interviewed about the allegations on March 21, 2019; and notified of his removal on April 24, 2019, which Plaintiff appealed. (SAC ¶¶ 16–21.) Thereafter, on July 17, 2019, Paragon terminated

Plaintiff's employment. (*Id.* ¶ 22.) On these facts, the process was "sufficient given the balance of [Plaintiff's] interest in maintaining employment and the government's interest in security." *Wilson*, 475 F.3d at 179. The Court, accordingly, grants the Federal Defendants' Motion for Judgment on the Pleadings as to Plaintiff's due process claim.

IV. <u>CONCLUSION</u>

For the reasons set forth above, the Federal Defendants' Motion for Judgment on the Pleadings is granted. The Court will enter an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE