**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALBERT DECOLLI,<br><br>Plaintiff,<br><br>v.<br><br>PARAGON SYSTEMS, INC., *et al*,<br><br>Defendants. | Civil Action No. 19-21192 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Paragon Systems, Inc.'s ("Paragon") Motion for Summary Judgment. (ECF No. 52.) Plaintiff Albert DeColli ("Plaintiff") opposed (ECF No. 56), and Paragon replied (ECF No. 57). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court grants Paragon's Motion for Summary Judgment.

**I.    BACKGROUND**[1]

Plaintiff is a seventy-one-year-old male who worked as a United States Marshals Service ("USMS") Court Security Officer ("CSO") at federal courthouses from April 2010 until his employment was terminated in June 2019. (Second Amended Complaint ("SAC") ¶¶ 1, 5, 20-22,

---

[1] The Court adopts the factual background as recited in its July 30, 2021, Memorandum Opinion (the "First Opinion," ECF No. 35) and only provides additional background and procedural information where relevant for the instant Motion. On a summary judgment motion, the Court will "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

ECF No. 11; Defendant's Statement of Undisputed Material Facts ("DSUMF") ¶ 2, ECF No. 52-2.) Plaintiff was last employed by Paragon, a private security company that contracts with USMS to provide security for federal courthouses. (SAC ¶¶ 5; DSUMF ¶ 2.) On March 7, 2019, Paragon informed Plaintiff that he was being suspended for "several ongoing incidents." (SAC ¶ 16; DSUMF ¶ 16.) The suspension form that Plaintiff received described those incidents as follows: "Investigation has sustained intimidation and harassment of other CSO[s] in the workplace. Also, USMS Performance Standard Violations (PSV) Investigation is ongoing." (SAC ¶ 16; Pl.'s Counterstatement to Defendant's Undisputed Material Facts ("PCUMF") ¶ 6, ECF No. 55-2.) On March 21, 2019, Paragon interviewed Plaintiff about the alleged incidents. (SAC ¶ 18.) During the interview, Paragon explained that Plaintiff was accused of (1) changing his clothes in front of female CSOs, and (2) intimidating and harassing female CSOs by not speaking to them. (*Id.*) Plaintiff denied both accusations. (*Id.* ¶ 19.) On April 24, 2019, Paragon notified Plaintiff that USMS had directed his removal from his position at the courthouse. (*Id.* ¶ 20.) Plaintiff appealed USMS's decision. (*Id.* ¶ 21.) On July 17, 2019, Plaintiff learned via letter from Paragon that Paragon had terminated his employment because of USMS's decision to remove him from the site. (*Id.* ¶ 22.)

Plaintiff asserts that he was treated "differently and less favorably" than two younger CSOs who were accused of more serious misconduct and, thus, that he was terminated based on his age. (*Id.* ¶ 26.) Because the investigation against him was "sustained" before Plaintiff had an opportunity to provide his perspective, Plaintiff further alleges that the female CSOs who made the allegations against him received preferential treatment; Plaintiff, accordingly, also alleges that he was terminated based on his gender. (*See id.* ¶ 27.)

In August 2019, Plaintiff filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC"), alleging gender and age discrimination. (*Id.* ¶ 12.) At this time, Plaintiff also filed a similar complaint with USMS's Office of Equal Opportunity. (*Id.* ¶ 13.) In September 2019, the EEOC informed Plaintiff that it found no violation. (*See id.* ¶ 14.)

In December 2019, Plaintiff filed the initial underlying action against Paragon, USMS, and the United States Department of Justice ("DOJ"). (*See* ECF No. 1.) Plaintiff filed the five-count SAC on March 6, 2020, alleging as follows: violation of the Age Discrimination in Employment Act ("ADEA") for age discrimination against Paragon, USMS, and DOJ (Count I); violation of Title VII of the Civil Rights Act of 1964 ("Title VII") for gender discrimination against Paragon, USMS, and DOJ (Count II); violation of the New Jersey Law Against Discrimination ("NJLAD") for age and gender discrimination against Paragon (Count III); violation of the Fifth Amendment's Due Process Clause against USMS (Count IV); and violation of the Fifth Amendment's Due Process Clause against Paragon (Count V). (See SAC ¶¶ 29-61.)

On November 30, 2020, USMS and DOJ moved for judgment on the pleadings on the three Counts that implicated them, Counts I, II, and IV. (*See* ECF No. 29.) On July 30, 2021, in the First Opinion, the Court granted USMS and DOJ's Motion for Judgment on the Pleadings. (*See generally* First Op.) As to the ADEA and Title VII claims, the Court found that Plaintiff was not an employee of DOJ or USMS. (First Op. 8-9.) As to the Due Process claim, the Court found that the process given to Plaintiff was sufficient when balancing Plaintiff's interest in maintaining employment and the government's interest in maintaining security. (*Id.* at 10-11.) The Court, accordingly, dismissed Counts I, II, and IV against DOJ and USMS. (*See* ECF Nos. 36 (Order dismissing these Counts), 38 (Order clarifying that dismissal of Counts I and II applied only as to the then-moving parties, DOJ and USMS).)

Following the First Opinion and the conclusion of discovery, Paragon filed the instant Motion for Summary Judgment to dismiss the Counts asserted against it, namely Counts I, II, III, and V. (*See generally* Def.'s Moving Br., ECF No. 52-1.) The Motion is now ripe for resolution.

## II.     **LEGAL STANDARD**

Federal Rule of Civil Procedure 56(a)[2] provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson*, 477 U.S. at 247-48; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine disputes of material fact exist). "[U]nsupported allegations in . . . pleadings are insufficient to repel summary judgment." *Schoch v. First Fid.*

---

[2] Hereinafter, all references to a "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

*Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . there can be 'no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

### III.    DISCUSSION

#### A.    Age Discrimination and Due Process Claims

The Court quickly disposes of Plaintiff's age discrimination and due process claims due to principles of abandonment. As for the age discrimination claims, Paragon contends that Plaintiff cannot make a prima facie showing of age discrimination and that, thus, his NJLAD and ADEA claims should be dismissed as a matter of law. (Def.'s Moving Br. 8-10.) Paragon further contends that even if Plaintiff could make a prima facie case, the record evidence establishes a legitimate, nondiscriminatory reason for Plaintiff's termination, and that the record also fails to establish any evidence of pretext. (*Id.* at 10-20.) As for Plaintiff's due process claim, which Plaintiff brings pursuant to 42 U.S.C. § 1983, Paragon claims that it too must fail as a matter of law "because

(1) Paragon is a private company and was not acting under color of state law in making any decisions with regard to Plaintiff, and (2) this Court previously ruled that Plaintiff received sufficient process; a ruling that is the law of the case." (Def.'s Moving Br. 20-21.) In his opposition brief, Plaintiff fails to address any of Paragon's arguments pertaining to his age discrimination or due process claims. (*See generally* Pl.'s Opp'n Br., ECF No. 56.) Instead, Plaintiff devotes the entirety of his opposition brief to his gender discrimination claims. (*See generally id.*) The Court, accordingly, deems Plaintiff's age discrimination claims (Count I and, partly, Count III)[3] and his due process claim (Count V) to be abandoned and, thus, grants summary judgment as to these claims. *See Uddoh v. Selective Ins. Co. of Am.*, 2014 WL 7404540, at *7 (D.N.J. Dec. 29, 2014) ("In his opposition and reply briefs, [p]laintiff failed to address [d]efendant's arguments regarding the re-rating claim and state law causes of action. The Court deems these claims to be abandoned as a result."); *Stankevicius v. Town of Harrison*, No. 18-9649, 2022 WL 3273872, at *4 n.6 (D.N.J. Aug. 10, 2022) ("Plaintiff failed to address these arguments in opposition [to the motion for summary judgment], which constitutes abandonment.").

B.    **Gender Discrimination Claims**

The crux of this dispute centers on Plaintiff's gender discrimination claims brought pursuant to NJLAD and Title VII. The sole alleged factual basis in the SAC for Plaintiff's gender discrimination claims is as follows: "The investigation into Plaintiff's alleged conduct was also improperly sustained even before he was interviewed, thus treating the female CSOs who made the allegations against him substantially better than Plaintiff based upon gender. Accordingly, Plaintiff alleges that he was terminated illegally based upon his gender." (SAC ¶ 27.) Paragon

---

[3] Count III also consists of Plaintiff's gender discrimination claim under NJLAD, which the Court addresses below.

makes the same argument for Plaintiff's gender discrimination claims as it did for the age discrimination claims, which is that Plaintiff cannot make a prima facie showing of gender discrimination and that, even if he could, the record evidence establishes a legitimate, nondiscriminatory reason for Plaintiff's termination and no evidence of pretext. (Def.'s Moving Br. 6-8, 10-20.)

All discrimination claims brought under Title VII and NJLAD, including those based on sex, which rely on circumstantial evidence, are controlled by the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841 (3d Cir. 2016); *see Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 & n.7 (3d Cir. 2006) (applying the *McDonnell Douglas* framework to a Title VII gender discrimination claim); *Viscik v. Fowler Equip. Co.*, 800 A.2d 826, 833-34 (2002) (adopting the *McDonnell Douglas* framework for NJLAD employment discrimination cases).

The *McDonnell Douglas* framework requires that the plaintiff first establish a prima facie case of discrimination or retaliation. *McDonnell Douglas Corp.*, 411 U.S. at 802-804. If the plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, nonretaliatory or nondiscriminatory reason for its actions. *Id.* If the employer produces such a reason, the burden then shifts back to the plaintiff to prove that the employer's nonretaliatory or nondiscriminatory explanation is merely a pretext for the discrimination or retaliation. *Id.*; *see Atkinson*, 460 F.3d at 454. In the context of a summary judgement challenge, at the pretext stage of *McDonnell Douglas* the appellant "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Tomasso v. Boeing*

*Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)) (internal quotation marks omitted). To accomplish this, the appellant must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] nondiscriminatory reasons." *Id.* (alteration in original) (quoting *Fuentes*, 32 F.3d at 765) (internal quotation marks omitted).

This Court's discrimination inquiry is the same for claims filed under Title VII and NJLAD, as the New Jersey statute borrows the federal standard set forth in *McDonnell Douglas. See Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 249 (3d Cir. 2006). To establish a prima facie case of sex discrimination under either the federal or state statute, a plaintiff must first establish that: (1) he is a member of a protected class; (2) he was qualified for the position in question; (3) he suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999); *see Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 n.6 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802). To constitute an adverse employment action, the action must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1301 (3d Cir. 1997)) (internal quotation marks omitted). To satisfy the elements of a prima facie case, an adverse employment action must be material.

Here, the record does not reflect, and Plaintiff does not argue, that direct evidence of gender discrimination exists. (*See* SAC ¶ 27; Olitt Cert. Ex. B, Pl.'s Dep. Tr. 230:22-25, 231:1-2, ECF No.

52-4 (Plaintiff clarifying that the only basis of his gender discrimination claims against Paragon is that Paragon believed the accusations of women in the investigation against him and that he is a male); Pl.'s Opp'n Br. 5 (Plaintiff agreeing that his gender discrimination claims should be analyzed under the *McDonnell Douglas* framework).) Plaintiff must, therefore, establish a prima facie case of discrimination through indirect evidence under the *McDonnell Douglas* framework. *See Gray v. York Newspapers*, 957 F.2d 1070, 1078 (3d Cir. 1992).

The Court finds that Plaintiff fails to meet his burden of establishing a prima facie case of gender discrimination. In opposition to the present Motion, Plaintiff does not focus on the specific circumstances surrounding his termination. Instead, he contends that Paragon treated him less favorably on the basis of his gender due to three facts: (1) Paragon did not investigate allegations that Plaintiff made about a female CSO which, if substantiated, would constitute violations of workplace standards and, possibly, harassment; (2) Paragon investigated allegations against Plaintiff that were raised during the course of a different investigation into another male CSO; and (3) during that other investigation, "allegations made against a female CSO were raised" but again, Paragon never investigated them. (Pl.'s Opp'n Br. 6-8.) These facts, Plaintiff contends, "certainly raise the issue of discriminatory intent on the part of Paragon relating to the allegations against [Plaintiff] because the female CSO was treated better than him when allegations made against her were never even investigated." (*Id.* at 7.) But the SAC does not contain *any* allegation that a similarly situated female employee was treated more favorably than him (*i.e.* that female CSOs not undergoing investigations of their own when similarly faced with allegations of misconduct). Rather, the SAC focuses on the alleged fact that the investigation into Plaintiff's conduct was improperly sustained, which Plaintiff contends meant that those female CSOs who made the allegations against him were treated "substantially better than Plaintiff." (SAC ¶ 27.) Thus, these

other facts now asserted by Plaintiff are unrelated to the underlying gender discrimination claim as asserted in the SAC.

Even assuming the veracity of these facts, none of them raise a genuine dispute of material fact because none of them demonstrate that a similarly situated female employee was treated more favorably than Plaintiff, as is necessary to support a prima facie inference of gender discrimination under a disparate-impact theory. *See Kant v. Seton Hall Univ.*, 289 F. App'x 564, 566 (3d Cir. 2008) ("To set forth a prima facie case of disparate treatment a plaintiff must show that he or she: 1) belongs to a protected class; 2) was qualified for the employment benefit he sought, and that 3) nonmembers of the protected class were treated more favorably."). For example, as specific evidence of disparate treatment, Plaintiff claims that Paragon failed to investigate his own allegations, which he made during the investigation into his own misconduct, that female CSO Regina Devery ("Devery") wanted to tell Plaintiff dirty jokes and that she cut coupons while on shift. (Pl.'s Opp'n Br. 2-3; PCUMF ¶ 14.) Perhaps unsurprisingly, Devery was one of the CSOs who had previously issued a complaint against Plaintiff. (PCUMF ¶ 2; DSUMF ¶ 14.)

Yet putting aside the timing and suspect circumstances of Plaintiff making an accusation against one of his own accusers, Plaintiff's alleged statements on Devery's misconduct are not remotely comparable to the statements of misconduct alleged against Plaintiff, which include allegations that he took off his pants in front of a different female CSO; that he claimed women should not be CSOs or in law enforcement; that he ignored female CSOs entirely; that he created a hostile work environment; and that he had a poor demeanor overall. (DSUMF ¶¶ 15, 21-23; Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("PRSUMF") ¶¶ 15, 21, 23, ECF No. 55-1 (Plaintiff admitting that these were the nature of the allegations against him).) In any event, the record does not reflect what steps Paragon did or did not take to address

Plaintiff's comments about Devery, further cementing the Court's finding that Plaintiff has failed to demonstrate a prime facie case of disparate treatment regarding, at least, his allegations pertaining to Devery and Paragon's comparative response to them. (*See* Def.'s Moving Br. 7.) The Court need not analyze Plaintiff's other alleged facts, outlined above, which supposedly demonstrate disparate treatment (one of which, confusingly, involves a male supervisor failing to investigate complaints about a different male CSO as evidence of the anti-male bias against Plaintiff). (*See* Pl.'s Opp'n Br. 3.) This is because, when asked at his deposition whether he was aware of any female CSO who engaged in or was accused of behavior comparable to the behavior that he was found to have engaged in and not comparably disciplined, Plaintiff plainly responded, "I don't know of any females that were accused of anything." (Olitt Cert. Ex. B, Pl.'s Dep. Tr. 230:17-21, ECF No. 52-4.) Because of his failure to identify any similarly situated female employee who was treated more favorably than him, the Court finds that Plaintiff fails to make a prima facie case of gender discrimination.

Assuming arguendo that Plaintiff could make a prime facie case of gender discrimination, the Court further finds that Paragon successfully articulated a legitimate, nondiscriminatory reason for Plaintiff's termination and that Plaintiff fails to demonstrate that this reason was pretextual. *See McDonnell Douglas Corp.*, 411 U.S. at 802-04. Plaintiff does not dispute that the investigation against him was led by Paragon's then-Contract Manager for the Third Circuit, David McClintock ("McClintock"), a male. (DSUMF ¶ 12; PRSUMF ¶ 12.) As such, Plaintiff does not make any allegations, for example, that McClintock's investigation against him was motivated by animus against Plaintiff because he is male. Furthermore, Plaintiff does not dispute that it was USMS that, based on McClintock's findings, ultimately made the decision to prohibit Plaintiff from working under its contract with Paragon and directed Paragon to remove him. (DSUMF ¶ 30; PRSUMF

¶ 30 ("It is admitted that USMS directed Paragon to remove him from the contract.").) Indeed, Paragon initially recommended *lesser* discipline for Plaintiff based on McClintock's findings—a proposed suspension and transfer—which USMS rejected, and which would have *saved* Plaintiff's position from termination. (*See* DSUMF ¶¶ 28-30; PRSUMF ¶ 30; *see also* PRSUMF ¶ 41 ("It is admitted that Plaintiff acknowledged that if USMS has accepted Paragon[']s decision, he would still be employed."); Pl.'s Dep. Tr. 233:4-11 (Plaintiff acknowledging that if USMS had accepted Paragon's proposed suspension and transfer, he would still be working for Paragon).) The record is clear that it was only when USMS directed Plaintiff's removal from working under Paragon's contract with it that Paragon was left with no site to transfer him to. (DSUMF ¶¶ 35-37; PRSUMF ¶¶ 35-37.) Thus, the Court finds that Paragon terminated Plaintiff's employment for a legitimate, nondiscriminatory reason—namely, the logistical consequences of USMS dropping Plaintiff from its contract with Paragon, and Paragon having no feasible site left in which to place him.

In rebuttal, Plaintiff's only contention that Paragon's termination decision was pretextual boils down to his repeated claim, which the Court has already addressed above, that Paragon's investigation of him was biased and incomplete because Paragon did not investigate instances of alleged misconduct by other CSOs. (*See* Pl.'s Opp'n Br. 9-10.) In sum, Plaintiff provides no evidence that his termination, which he concedes was a result of Paragon logistically having no site to transfer him to after USMS directed that he be removed from the contract with it, had anything to do with gender discrimination. *See Fichter v. AMG Res. Corp.*, 528 F. App'x 225, 230 (3d Cir. 2013) (explaining that a plaintiff must offer evidence that contradicts defendant's "core facts" for its adverse decision). The Court, accordingly, finds no evidence that Paragon's decision to terminate Plaintiff was pretext for gender discrimination.

Because Plaintiff cannot make a prima facie case for gender discrimination, nor can he show that Paragon's proffered justification is unworthy of credence or that the real reason for the

termination decision was discrimination, Plaintiff's gender discrimination claims under Title VII and NJLAD fail. *See Torre*, 42 F.3d at 832.

The Court finds, therefore, that summary judgment is appropriate.

## IV. CONCLUSION

For the reasons set forth above, the Court grants Paragon's Motion for Summary Judgment. The Court will enter an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

13